This is Gerber Chiropractic v. GEICO. Mr. Hunker is here for the appellant. Mr. Gowdy for the appellee. Mr. Hunker, once everybody is situated, you can begin. Good morning. May it please the Court, Thomas Hunker on behalf of the appellant GEICO. In this case, reversal is required for two reasons. Number one, we ask the Court to reverse the District Court's unprecedented expansion of Rule 23b-2 to encompass a case where injunctive relief was not available and the relief sought related to unpled individualized claims for damages that could not be certified under Rule 23b-3. And we also ask the Court to reverse the summary judgment which was entered without standing and which misinterpreted GEICO's policy. Beginning with the class certification issue, under Rule 23b-2, certification is proper only if final injunctive relief or corresponding declaratory relief is appropriate and is not available when the appropriate final relief relates exclusively or predominantly to money damages. Well, that's what Gerber says they're seeking. They're just seeking simple declaratory relief, a statement that GEICO may not interpret its policy as requiring the insureds to pay a 20% copayment even when the total cost is less than the fee of scheduled amount. That's all they're asking for, right? They're not asking for any form of monetary damages. They're just asking the Court, they're asking for a declaratory judgment by the Court to interpret the contract. Am I wrong about that? What they've done is they've essentially reframed part of their damages claim as a declaratory count. They're asking for monetary damages? They are not asking in this suit specifically to be awarded monetary damages. But I don't believe that that is the deciding factor. As this Court has previously ruled, in cases where they do seek both Account 1 for declaratory relief and Account 2 for monetary damages, if you can't certify that count for monetary damages, then you can't certify the count for declaratory relief. So for that reason, why would the analysis be any different simply by artful pleading, leaving out the compensatory damages count? It's very similar to what happened in Walmart v. Dukes, wherein the Supreme Court noted that the class counsels specifically omitted a count for compensatory damages so that they could squeeze it into Rule 23b-2. And the Court said that's improper because the collateral estoppel effects of the decision could prejudice the individual class member's damages claims and shouldn't be prejudiced just because the class counsel omitted that count. Well, a 23b-2 class frequently includes a claim for declaratory relief, right? Right, but there is no appellate authority. At least, I haven't seen them cite any appellate authority authorizing this. Actually, there is some authority. If you look at what has been submitted, there's the Berger case from the Seventh Circuit. The Berger case, I believe that was the one where it was an ERISA claim. And then there's the case that was cited subsequently from this circuit, the Eleventh Circuit, that your opposing counsel submitted more recently by letter. Right, if you're referring to those cases in the supplemental authority, those are readily distinguishable from this case for the simple fact that… Maybe you should do that. Sure. The first case that they cite from this court was a racial discrimination claim. And that's a textbook B-2 claim. It's even how B-2 arose out of equity practice. Under Section 1983, injunctive relief is available. Under the statutory framework, it's a cause of action for injunctive relief. Unlike the Florida no-fault scheme, which admittedly does not create a cause of action for injunctive relief to enforce the terms of the PIP policy, the Florida courts have held that there's only one cause of action, and that's a cause of action for PIP benefits. And as this Court noted in the Christ case, it was a very similar fact pattern where the claim was based on TILA, the Truth in Lending Act, which this Court noted does not create a cause of action for injunctive relief. And if that's the case, under the substantive statute this Court held, that you can't simply proceed on under the DJA for declaratory judgment. The other case that they cite in their supplemental authority is the Berger — I believe it's the Berger case that you mentioned. And again, that's an ERISA case. Under the ERISA statutes, there is a statutory cause of action for injunctive relief to enforce the terms of the ERISA plan. So those cases are readily distinguishable from PIP. And so for that reason, I don't think they have any applicability here. Now, with respect to issues, no case in the insurance context, no appellate decision has really done this, because what you need to show in order to get an injunction, that action has to be injunctive in nature, not just equitable in nature, but injunctive in nature. And what you have to show is that you've suffered irreparable harm, you have a clear legal right, and you don't have an adequate remedy at law. They have made no attempt to satisfy, even plead, any of those elements in this case, and for that reason alone, this B-2 would not be proper. A similar situation was presented in the Cartman case that we cite in our brief. And I would direct the Court to look at the very last paragraph in that case. It was an insurance case. And they say, in a case where you're basically, the only injunctive relief you could ask would be to either reprocess the claim or pay benefits, you haven't established an adequate, an availability of an adequate remedy at law. What you have to show is that, essentially, either there's a statutory cause of action for injunction, or in most cases, even in the patent case, these are several examples under the rule, they've had patent mis- There's no threat of future injury? Well, they haven't even established a single injury in this case. The Court has determined that liability is left for future cases. So we don't even see any injury at all, much less a future injury. They're injured depending upon how the insurance contract is interpreted. Well, but in PIPP, you have to remember, under the statute in PIPP, you can contest their burden. They have to meet their burden every time. And you can raise your defenses. And that's what the Court ended up doing in the order, is putting all these qualifications on the declaratory relief, which basically says, in order to prove an injury, you've got to file a suit for damages, prove your burden, and overcome the defenses. Well, and speaking of injury, can you address what is sort of the jarring point of this case? This is not a case where one of your insureds is seeking to represent a class because of some problem with the payment from the insurance company. Right. This is an assignee of one of your insureds. Correct. And so other than the claim for past due monies, what interest does the plaintiff have in the perspective component of this? Well, they don't have an interest. They don't have a statutory right for an injunction, as I said before. This is different from racial discrimination or gender discrimination case, where the very discrimination itself is an invasion of a personal right, separate in part from the monetary damages that you would be able to recover for violation of that right. So in this case, the only thing that's at issue is the money. It's all about the money. The past due money. Past due money, yes. For one insured for your company who assigned its rights under that policy for that incident. Correct. Before we leave the Rule 23b-2 issue, have you seen the Supreme Court's decision, Jennings v. Rodriguez, decided after you filed your briefs? Yes, I did see there was some dicta in there. But it says if it's on remand, the Court of Appeals, the Ninth Circuit in that case, if it should decide whether that remedy can be sustained, if it concludes that it may issue only declaratory relief, then it should decide whether that remedy can sustain the class on its own. So the question I have for you is if it was obvious, why did the Supreme Court ask the Ninth Circuit to decide that? Exactly. My point is that they emphasized the word corresponding declaratory relief. It's not all declaratory relief. It has to correspond to a right to injunctive relief. It's or corresponding, though, not and corresponding. Well, or corresponding. But you can't get rid of that word corresponding. It has a definite meaning. And even in this Court's Christ case, it determined that you just can't bring a random claim for declaratory relief under the DJA if there's no injunctive relief available. And I think that that dicta in the case that you just mentioned from the Supreme Court actually supports our position because it's telling the lower court that there's a strong possibility that you can't just go on declaratory relief alone. And I think that's where the Court went wrong in this case. And I see I'm going low on my time, so I'd like to address some of the other issues, unless the Court has any further questions on the class action. Specifically with the standing issue, it's undisputed that at the time the lawsuit was filed, standing has to be measured at the time the lawsuit is filed. And it's undisputed that benefits were only $2,500. It's undisputed there was no emergency medical condition diagnosis at the time the lawsuit was filed. So the very basis of their declaratory count, which is I have a live controversy because I was underpaid, didn't exist at the time the lawsuit was filed. Now, they got an EMC after the lawsuit was filed, but as this Court has held, you can't create or cure a lack of standing that didn't exist at the time the suit was filed by obtaining it during suit. So for that reason, summary judgment should be reversed due to lack of standing. We also point out that there was a factual dispute regarding the contents of the policy, specifically having to do with the M608 endorsement. GEICO maintains that that was part and parcel of the policy. It states in the title that it is an endorsement. It describes what GEICO will pay pursuant to the terms of the policy. It was required to be issued by the Office of Insurance Regulation. And it was issued with every policy effective and renewed after January 1, 2013. Before we get to the last two points of your argument, can you address the standing in the Mills case? Well, in the Mills case, it was different because the question there was what benefits are covered under the policy. The specific charges that would be covered or not covered under the policy. So depending on the outcome of that question, it was a live dispute as to whether those benefits were covered. But here, all of the facts relating to standing were not in dispute. At the time the lawsuit was filed, they don't contend there were any benefits available on the policy. They concede that there was no emergency medical condition, and they concede  So that's a really relevant distinction to the Mills case. And lastly, I'd like to just briefly address the policy language. In this case, all signs pointed to the 80 percent language. And the Court really went against the thrust of the intent of that provision of the policy, particularly when it's considered in context of the FLPIP 0113, where you have the scope of subparts canon, which directs all subparagraphs that are modified by the preceding paragraph, and the preceding paragraph says 80 percent. It also says that what GEICO is trying to do here is pay pursuant to the statute. It even cites the statute in this provision, but the Court seemed to think that the statute was somehow not relevant because of these distinctions, yet the Court determined that the language amount allowed above was ambiguous, but didn't seek to resolve that alleged ambiguity with reference to the very statute that's cited in that provision of the policy. If the language in the policy is ambiguous, isn't it clear in this circuit that we construe the language against the insurer and in favor of coverage? That is a rule of last resort, and in Ruderman, this Court certified that question to the Florida Supreme Court. That's one of the main cases they rely on, and the Florida Supreme Court only issued a plurality opinion with a very long and detailed dissent, which cites numerous cases saying that that is a rule of last resort. The Court is first to try to determine if the ambiguity can be resolved either with reference to the statutory framework this case arises under. So what are you saying the law of Florida is now? The law of Florida, at least the cases that are controlling on this issue, is that you first have to try to resolve the ambiguity. Extrinsic evidence may be considered, then, is what you're saying. Parole evidence may be considered, including even if the Court finds that the M608 endorsement is not part of the policy, it still should be considered as parole evidence. In addition, the Court should look at the other parts of the policy. In other parts of the policy, when Geico wants to pay 100 percent, they say 100 percent. They don't say 80 percent. In, for example, the APIP, as we point out, and in the MedPay provisions, it says right there expressly 100 percent. And so when you take the statute in context where it says amount allowed under subsection 1 points right back to the 80 percent, and then you take into account the M608 endorsement, the other parts of the policy, and the page that is in dispute, it all points back to 80 percent. So for that reason, the Court's interpretation is wrong, and we would ask on both grounds for the Court to reverse. All right, thank you, Mr. Hunker. We'll hear from Mr. Gowdy. Good morning. May it please the Court, Brian Gowdy on behalf of the plaintiff and Ed Zaburski is with me, counsel at table. I want to start with the contract interpretation argument. And, you know, I think there's a lot of pride focus from the panel on the Rule 23b-2 issue, but we believe the contract interpretation is pretty straightforward here. And however you decide on the Rule 23b-2 issue, which we think you should affirm that, of course, but you should affirm the contract interpretation. The suggestion that it should be certified to the Florida Supreme Court seems like a waste of a lot of resources. This is a contract specific to GEICO. It seems to be they might have made a drafting error. They didn't want it this way. It's not reason, though, to have some novel question to go to the Florida Supreme Court. Furthermore, this argument made in point three of the brief was not preserved below. They've now argued for the first time on appeal that there is this disputed issue of fact. That's not what they argued below. If you look at page two of their response to the summary judgment motion, they told the court, GEICO requests a hearing on this matter because the motion concerns a dispositive issue of law, and this Court's ruling will directly impact the many thousands of claims of individual class members. Well, that's an alternative argument, assuming it's not decisive as a matter of law, right? I agree it's an alternative argument, but it wasn't made below, Your Honor. At least I can't find it in the record. Their argument below was that it was cross motions for summary judgment, and this was a legal question for the court to decide. Well, there was evidence filed. I mean, the affidavit was filed to establish that it was done in accordance with the court's ruling. Absolutely, on the cross motions for summary judgment. That doesn't create a disputed issue of fact, though. I don't understand what a jury or a judge at a bench trial is going to decide differently than what was decided on cross motions for summary judgment. And their entire third point on appeal is that they're now disputed issues of fact. And I agree, Judge Vinson, you can make that as an alternative argument, but it was, as best I can tell from reviewing this record, I don't see where that was made to Judge Bloom, that argument. And it would be unfair to reverse the district judge on something not presented below. I don't think she addressed it in her opinion either, right? That's correct, because it was never argued below. And that should just take out the third point in their brief for not being preserved, Your Honor. Turning to the Rule 23b-2, Judge Branch, I want to answer your question. This is not just about past relief. And there's nothing unusual about the fact that the provider, as opposed to the insured, brings the claim. Chiropractors and other medical professionals have, you know, hundreds, thousands of patients on these PIP policies in Florida. And I would encourage the court, it's not brought up directly in the briefs, but there was a lot of litigation below on the motion to disqualify the class representative, as well as a motion for intervention by another medical provider. There's a lot of evidence there that the district judge got to rule upon, where Dr. Gerber made it clear that he has other patients who are Geico insureds. He made it clear, there's two depositions of him in the record. He made it clear that he has an ongoing chiropractor. And I want to point out, because this, the declaratory relief, as we say in the cases cited in the supplemental authority and in the Gooch case from the Sixth Circuit that I want to focus on, all make it clear that there's nothing unusual about having declaratory relief as a precursor to monetary relief. But that is not the only purpose of this declaratory relief in this case. And I would encourage the court to go back and look at what the district judge saw with the motion to disqualify, because what Geico accused Dr. Gerber of was fraud. And so, and here's why. And here's why it's important for all these chiropractors and other providers to have this cleared up. If the contract is as Geico says it is, where the insurance company pays 80% and the patient pays 20%, then the chiropractors need to be collecting that or trying to collect that 20% from the patients. And what they accused Dr. Gerber of was insurance fraud. In this case, they accused him of this, because they said you weren't trying to collect the 20%, so you were really billing us the whole 100%. Now, why is the declaratory relief important? Well, if we're right, then Dr. Gerber can tell his insureds, I'm not going to collect anything from you because Geico has to pay 100%. And so, this is an issue for his license. There's lots of things this declaratory relief will provide to the class on a daily basis, because these providers need to know, should I be making collection efforts against these patients, or am I able to just go to Geico? So they need to know what the environment is that they're working in so they can bill accordingly and treat accordingly. Right. Putting aside the question of monetary claims, which we're not, that will come. I'm not trying to run away from that. And I think you should go back and look at Geico's response to our motion to remand. Geico put in evidence from a corporate representative deposition that there were 1.9 million bills submitted under this provision, and that the estimated aggregate overcharging, I'm sorry, underpayment by them, underpayment by Geico is close to $23 million. Wait, wait, wait. You said 1.9 million bills submitted. And 77,000 claims. That's the number I have. It's a lot. And they admitted this is an ongoing practice of theirs pursuant to this provision. And what we're really here about, and the reason the debt relief was filed, was just to find out, I have it here in front of me. It's one page. The whole case is about this. Doc 67-1, page 31. I've highlighted for my copy here the pertinent language. But it's very simple language. It says a charge submitted by a provider for an amount less than the amount allowed above shall be paid in the amount of the charge submitted. And so the whole dispute here that makes a big difference for Florida chiropractors and other providers who regularly have PIP patients from Geico is what was meant by less than the amount allowed above. But you're talking about how your client has an interest in prospective harm. But in your motion to remand, you argued that your client lacked Article III standing because you had not alleged a substantial likelihood of future substantial harm. What's changed? Right. Very odd how this case panned out. There are arguable differences between the Florida DEC Judgment Act and the Federal Declaratory Judgment Act. And there's an unpublished case from this court in 2016, which made the point that even if you meet all the CAFA requirements, if you don't have standing under federal law, you may nonetheless want to go back. You have the right to go back to state court and see if you have standing under Florida law. And this isn't in the brief, but there's a 1994 case from the Florida Supreme Court, a tax case, noting the differences between Florida standing and federal standing. And so, you know, therefore, in the abundance of caution, we brought to the issue of the district court the potential that there might not be standing and that it should be remanded. The district court disagreed with us. There was a petition filed in this court. This court affirmed. And we are living with that decision. And I don't think they've changed anything there. What they're bringing up now is their standing arguments are issues that are under the Mills case that Judge Vinson brought up are the merits. So I don't know if that answers your question, but what's changed is we brought an issue to the attention of the court. I believe Judge Bloom got it right at the onset on the standing. They're not challenging that initial determination. They're saying there was more facts that came to light about Dr. Gerber and about the emergency medical condition, which are merits issues on the claim that matters. And I think the other thing, just so Judge Branch will understand this. Before you go too far, why don't you address your response to the argument that Mills is different and not applicable to this? Well, it's not. We explained in our brief it's spot on. And I think what you're seeing happening here, and with the other cases we cited I believe are all relevant, what you're seeing the insurance company try to do here is to really push together and conflate the issues that are appropriate for Rule 12b-6 and Rule 56 with Article III standing. I mean, they're saying, for example, that there's a question about whether Mr. Caruthers had an emergency medical condition. And so under the policy and under the Florida statute, that varies whether you have a $2,500 or $10,000. Now, once we were told that they were going to contest that, we got an opinion from an authorized physician that there was an emergency medical condition. They want to dispute that. And what I was going to try to tell Judge Branch is a lot of this PIP litigation, it starts with having to do with demand under the statute, under subsection 10. And I think it's important that the court take a look at Judge Carnes' opinion in, sorry, let me get it in front of me here, in South Florida Wellness and footnote 2. And I know you, Judge Vinson, are familiar with that case from your Aurora decision as you spoke about it a lot. But what it says there in footnote 2 is a very similar situation where there was a charge that the insurance company was underpaying the claims. And it says, if the putative class obtained declaratory relief, all state might choose to simply pay the claimants the additional amounts owed after determining that it was not worth the cost to litigate the reasonableness of charges on 1.6 million different bills. If that did not occur, however, the putative class members would have to request the additional payment from Allstate and wait for Allstate to deny the request before they could file suit. See Florida Statute section 627.73610A. And if you dig into that statute, there's a lot of pre-suit requirements. And the Florida courts have recognized that it's appropriate before you do an action benefit, first you have to go to the pre-suit procedures under that statute. But they've recognized that you need declaratory relief sometimes to understand the contract or the statute before you do anything. And here's a big reason why. That statute requires that you put the exact amount you're claiming. And so you want to have everything lined up before you send that demand letter. And that's why the Florida courts have recognized that a declaratory action can help. It can help on a lot of other things, like I've talked about. I also know, Judge Vinson, you've looked at the supplemental authority we submitted a week ago. I wanted to bring the Court's attention to the Sixth Circuit's decision in Gooch, which is cited in our brief. And if you look at pages 427 to 29 of that opinion, it really makes the arguments, identical arguments that we're making here. It talks about the fact that B-2 certification, even after Walmart v. Dukes, remains available when the plaintiffs seek a declaration about the meaning of a contract. And the Court goes on to say that Gooch explicitly asked the Court, and it was an insurance case, I should tell the Court, Gooch explicitly asked the Court to enter a declaratory judgment separate from the request for restitution and monetary damages. He did not combine any claim for individualized relief with his class-wide injunction. And that's quoting from the Walmart case. Here, of course, we didn't even assert it. And the Court explains how it's appropriate to look at each claim separately for purposes of certification. So even if we had asserted a monetary damages claim, which we didn't do here, the Court would have been appropriate to do what the Court could do in Gooch, which is you certify B-2, the declaratory relief claim, and you may not certify the monetary damages claim at all. That may remain as an individual claim or have to meet the more rigorous requirements of B-3. But there's, anyway, I think if you go through and you read that case. I think we get your point. Before you're out of time, I do need to ask you about what I consider to be a critical issue of Florida law. Yes, sir. And that's whether, if there's ambiguity, can the Court, or should the Court, first consider extrinsic evidence that may deal with it. In your brief at page 7, the red brief, it says you'll construe it strictly against the insurer when you have ambiguous language without considering extrinsic evidence. I presume you're relying on your Rudderman case. And as your opposing counsel says, that was a plurality decision. What is the current status of Florida law in your opinion? I think it's what Your Honor said, and we don't have to rely on a single case. There's multiple cases in Florida, both at the Supreme Court and District Court of Appeal level, that make it clear that if there's an ambiguity in the insurance contract, it has to be construed in favor of the insured in coverage. Well, I need to point out to you there's numerous cases still coming out that say the opposite, including a decision by Judge Bloom herself after your decision. Well, I guess, Your Honor, I think it's pretty well settled in Florida law that the ambiguity has to be construed in favor of the insured. As far as considering extrinsic evidence, again, this wasn't argued below. It was cross motions for summary judgment. So I'm not sure what extrinsic evidence we're talking about. I see I'm over. May I conclude, Judge Wilson? Sure. The only thing I know of on the contract interpretation issue that I guess would be considered extrinsic evidence is this notice that was sent out. And they, of course, contend that the notice is part of the contract, and we say it's not. I think we have the better of the argument based on Judge Bloom's reasoning. She went through and pointed to the statute as to why that wasn't a valid endorsement. But I'll say this. Take that notice. It's on pages 2 and 3 of Judge Bloom's omnibus order at document 171, 2, 3, and 4. She lays out the language of the endorsement, which I have here, as well as this notice. And that's all the extrinsic evidence I think that there is, is this notice. And I would still say after you read this notice, if you were to consider it part of a contract, which it's not for the reasons Judge Bloom said, it's still ambiguous. I realize you're in overtime, but you didn't address the argument that Florida Statute 627.421 says that regardless of what these other requirements are, you still need to consider the provision valid. And you didn't address that in your reply brief. Well, Your Honor, I think if you go back and you read this, I did look at that statute in getting ready for this argument, and I actually don't agree with that reading of the statute. You better tell us why. I just would encourage the Court to go back and read the plain languages of the statute, and I don't think that the defense's argument is well taken on that. At the end of the day, Your Honor, though, I don't think you really need to even reach this issue. I think that even if you read the notice in conjunction with the endorsement, it's an ambiguity. And I'll try to appreciate the Court's liberty. I think there's nothing in that notice that contravenes, Judge Vinson, this plain language. A charge submitted by a provider for an amount less than the amount allowed above shall be paid in the amount of the charge submitted. And then if you look directly above that, it's talking about Medicare Part B and 200% for several sentences. They want to take you all the way up here.  It's that simple. And there's nothing in the notice that contradicts that language. So above, to me, means here, not here. Their argument is above is up here. All right. We have your argument, Mr. Gowdy. Thank you. Thank you, Your Honor. Thank you for the extra time. Mr. Hunker, you've reserved some time. If Dr. Gerber was concerned about being accused of fraud for not collecting copayments, what he gets to do is file an individual declaratory action on that basis. What he doesn't get to do is what happened in this case, is tie everyone else's fate to his fate by getting certification under B-2. That's exactly what Walmart versus Dukes warned against, is that you cannot, simply by omitting a claim for compensatory damages, get around the strictures of Rule 23B-3. The Gooch case that counsel relies on was a case where certification of the damages was available under Rule 23B-3. In this case, they concede, probably because of all the prior decisions from this court and the lower courts in Florida, that 23B-3 certification wouldn't be available for PIP damages because of all the individualized issues. They're trying to make an end run around that by squeezing this into B-2 where it simply doesn't apply. There's no injunctive relief available. They haven't cited a single case where an insurance, in the insurance context doing this, where damages were either not incidental or certifiable under B-3. All of the cases they pretty much rely on are the ERISA cases, the civil rights cases, all where injunctive relief is available. Now, with regard to the language of the policy, the court determined that the phrase, amount allowed above, was ambiguous. The next step in the analysis is to try to resolve that ambiguity. And Florida contract law says you look to, especially when it's a contract that arises out of a statutory framework, like PIP is a creature of contract, you look to the statute. And in this case, the policy tracks the statute. And in the statute, it says amount allowed under subsection 1. And if you go to subsection 1, that directs you right back to the 80%. So if you read the statute, the contract in light of the statute, it clears up any ambiguity. Further, just comparing it to other parts of the policy where they say 100%, they mean 100%, and the M-608 endorsement clearly says the maximum we will pay is 80%. All right. I think we have your argument, Mr. Hunker. Thank you. And the court is in recess until 9 o'clock.